# EXHIBIT 48

Exhibit 48
574

```
JOHN K. VAN DE KAMP, Attorney General
     of the State of California
HERSCHEL T. ELKINS & CHARLTON HOLLAND
     Assistant Attorneys General
ALBERT NORMAN SHELDEN  (619) 237-7754
PETER G. DeMAURO  (916) 324-5331
     Deputy Attorneys General
1515 K Street, Suite 511
Sacramento, California  95814

ARTHUR DANNER III, District Attorney
of Santa Cruz County
DON GARTNER  (408) 425-2071
     Assistant District Attorney
701 Ocean Street
Santa Cruz, California  95060
```

/ FILED
Santa Cruz County

OCT 1 5 1986

RICHARD W. BEDAL Clerk
By     Judy Dudley     Deputy

Attorneys for Plaintiffs

LAW OFFICES OF CONRAD LEE KLEIN
CONRAD LEE KLEIN
14001 Ventura Boulevard
Sherman Oaks, California  91423
Telephone:  (818) 986-8600

Attorneys for Defendants

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CRUZ

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA AND THE DIRECTOR OF THE DEPARTMENT OF HEALTH SERVICES,<br><br>Plaintiffs,<br><br>vs.<br><br>HERBALIFE INTERNATIONAL, INC., a California corporation, and MARK HUGHES, et al.<br><br>Defendants | No. 92767<br><br>FINAL JUDGMENT<br><br>AND<br><br>PERMANENT INJUNCTION |

(K)

Exhibit 48
575

```
 1        The People of the State of California and the Director
 2   of the Department of Health Services, having filed their
 3   complaint herein and defendants having been served with a
 4   summons and a copy of the complaint filed herein; and defen-
 5   dants Herbalife International, Inc. (herein Herbalife), a
 6   California corporation, and Mark Hughes, an individual, having
 7   filed their answer to the complaint; and plaintiffs appearing
 8   through their attorneys John Van de Kamp, Attorney General,
 9   Herschel T. Elkins and Charlton Holland, Assistant Attorneys
10   General; Albert Norman Shelden and Peter G. DeMauro, Deputy
11   Attorneys General, by Albert Norman Shelden and Peter G.
12   DeMauro, and Arthur Danner III, District Attorney of Santa
13   Cruz, Don Gartner, Assistant District Attorney, by Don Gartner;
14   and defendants Herbalife and Mark Hughes appearing through
15   their attorneys Law Offices of Conrad Lee Klein by Conrad Lee
16   Klein; and
17        It appearing that plaintiffs, the People of the State of
18   California and the Director of the Department of Health
19   Services, and defendants above named, personally and through
20   their attorneys, have stipulated and consented to the entry
21   of this final judgment and permanent injunction prior to the
22   taking of any proof and without trial or adjudication of any
23   fact or law herein and without this final judgment constituting
24   evidence or an admission by said defendants regarding any issue
25   or any fact alleged in said complaint, defendants having denied
26   the allegations in the complaint;
27        NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND
28   DECREED:
```

-2-

Exhibit 48
576

1. This court has jurisdiction in the State of California over the subject matter hereof and the parties hereto.

2. The provisions of this final judgment are applicable to: (a) defendants, Herbalife, Mark Hughes, and each of them, and their respective successors in interest, whether corporate or otherwise, and (b) those officers, directors and employees of said defendants and any other entities acting under, by or on behalf of either such defendant or pursuant to their direction, who have notice of this injunction.

3. Pursuant to Business and Professions Code Sections 17203 and 17535, defendants are hereby permanently enjoined and restrained from:

A. Using or causing to be used pages B-3 through B-10 of the Official Career Book which bears a copyright date of 1982.

B. Representing that defendants' products contain herbs: (1) which in and of themselves naturally curb the appetite; (2) which burn off calories; or, (3) which naturally cleanse the system. Defendants, however, are not restrained from representing that the herbs when used in the quantity recommended by defendants assist the natural self-cleansing function of the body, if there is a reasonable basis therefor.

C. Representing that one who uses defendants' products will lose weight without a reduction in the user's caloric intake.

D. Representing that defendants' Formula #2 is helpful for the conditions or organs enumerated in the complaint on

-3-

Exhibit 48
577

file at page 14, lines 8-27.

E. Representing that because of its iodine content, the use of kelp in Formula #2 is valuable in a weight reduction program.

F. Representing that the inclusion of lecithin in Formula #2 will result in an inch loss from fatty areas.

G. Representing that the manner in which defendants include cider vinegar in Formula #2 acts to help curb the appetite.

H. Representing that because of the herbs and the manner in which they are included in Herbalife's products, the use of such products will cleanse the villi and help prevent the clogging of the villi in the intestine. Defendants however, are not restrained from representing that the effect of the herbs as used in their product on the villious portion of the digestive tract is to aid its nutrient absorption function, if there is a reasonable basis therefor.

I. Representing that the Herbalife Cell-U-Loss product: (1) contains herbs which on their own naturally eliminate "cellulite" or the appearance of "cellulite"; (2) has the medicinal properties which are helpful for the conditions or organs enumerated in the complaint herein at pages 15-16 lines 25-3; or (3) directs weight loss to particular portions of the body. Defendants, however, are not restrained from representing that Cell-U-Loss is a unique vitamin, mineral and herb formula which assists elimination of excess fluids and helps reduce the appearance of "cellulite", if there is a reasonable basis therefor.

-4-

Exhibit 48
578

J. Representing that the Herbalife N.R.G product: (1) naturally increases energy; (2) naturally provides a nutritional lift; (3) has the medical action and uses enumerated in the complaint herein at page 16, lines 19-24; (4) helps to reduce hunger; or (5) that the product is a nutritional factor in health. Defendants, however, are not restrained from representing that N.R.G. provides a tremendous lift, aids mental alertness and reduces feelings of fatigue, if there is a reasonable basis therefor.

K. Failing to disclose in the career book and on the label that one of guarana's components is caffeine.

L. Representing that the Herbalifeline product: (1) dissipates the abnormal build-up of plaque in the arteries, or (2) provides protection for the entire vascular system. Defendants, however, are not restrained from representing that Herbalifeline includes several nutritional factors important for health, in a base of carefully selected herbs and supplies a full-spectrum marine source lipid complex, which is particularly rich in Omega 3 fatty acids, which are considered by various scientific experts to play a role in good cardiovascular health, if there is a reasonable basis therefor.

M. Representing that the Herbalife Schizandra Plus product helps to combat damage that can lead to premature aging. Defendants, however, are not restrained from representing that the nutrients in this product help combat premature damage to cells from toxins in the environment, and aid cell integrity, if there is reasonable basis therefor.

N. Representing that Tang Kuei relieves menstrual dis-

-5-

Exhibit 48
579

orders. Defendants, however, are not restrained from representing that Tang Kuei is an herbally based formula which nutritionally helps with the normal discomforts associated with the menstrual function, if there is a reasonable basis therefor.

O. Representing that Flora Fiber restores flow in the intestine and prevents disease. Defendants, however, are not restrained from representing that Flora fiber helps reconstitute and maintain essential flora of the gastrointestinal tract, provides fiber for a natural cleansing effect on the intestinal tract and helps contribute to a proper diet, if there is a reasonable basis therefor.

P. Representing that K-8 stops or affects psycho-neurotic depression. Defendants, however, are not restrained from representing that K-8 is an herbal formula with amino acids which helps to naturally offset feelings of temporary stress and moodiness, if there is a reasonable basis therefor.

Q. Making false or misleading representations with respect to any specific goals for participants in defendants' marketing program relating to the number of new customers or new participants a participant may obtain within a specific time period or an amount of money a participant may earn through bonuses and overrides.

R. Representing that defendants' offer their products with a "100% Satisfaction Guarantee (or your money back)" or any other such refund offer unless: (1) defendants in a clear and conspicuous manner disclose any limitations which apply to the refund offer at the time the refund offer is

-6-

Exhibit 48
580

disclosed; and, (2) defendants continue to clearly inform participants in their marketing program of such participants' obligations vis-a-vis a purchaser who invokes the refund offer, if participants in defendants' marketing program have any such obligation.

S. Defendants shall not use any "live" testimonials relating to the experience the individual giving the testimonial had with one or more of defendants' products unless prior to the taking of any testimonials at live presentations, defendants shall indicate, orally or in a separate or conspicuous writing, to those giving testimonials that: (1) testimonials cannot contain any untrue or misleading representations; (2) testimonials regarding any of defendants' weight loss products or products for special dietary use may not describe curative or preventive properties or experiences for disease or illness. Provided, however, defendants may indicate that an individual giving a testimonial may, if it is true as to that individual, make reference to general feelings of well-being as well as make reference to a product's effect to the same extent that defendants' can refer to that product's effect. If defendants have reason to believe that a testimonial in contravention of the above has been given they shall, no later than at the conclusion of the testimonial portion of the presentation, disavow such testimonial to those physically in the audience, and shall not thereafter utilize such contravening testimonial in any manner. If defendants have reason to believe that an individual either gave a testimonial in violation of (1), above, or continues

-7-

Exhibit 48
581

to give testimonials in violation of (2), above, then defendants shall not permit that person to again offer testimonials for defendants' product(s). The provisions of this paragraph "S" shall not apply to any live training meetings given only for and attended by distributors of Herbalife products; provided, however, representations or claims for defendants products not allowed to be made pursuant to this judgment shall not be made at such meetings.

T. (1) Subject to the exceptions in Section 6, below, engaging in the following described conduct: (a) Representing or implying that any current product of defendants diagnoses, cures, mitigates, treats or prevents disease if the product is a "new drug" as defined in Health and Safety Code Section 26021 disease unless defendants have first complied with the requirements of Health and Safety Code Section 26670 (a) or (b) and having the representations made for any products comply with the provisions of Health and Safety Code Sections 26660 and 26661, if those sections are applicable; (b) Offering for sale any drug unless it is safe and effective or any food unless it is safe and defendants have a reasonable basis for the claims made for such drug or food; (c) Representing that defendants' Formula 2 is helpful for any physical disorder or disease. The provisions set forth in subsection (a) of Section T do not apply to Herbatan and APR because those products, as of the date of this judgment, are not considered new drugs by the plaintiffs so long as the products are in compliance with over-the-counter monographs of the Food and Drug Administration and advertising for such is in conformity

-8-

Exhibit 48
582

with the standards therein; but plaintffs' right to enforce applicable laws are not affected hereby.

(2) If plaintiffs claim that any conduct not conforming to the preceding paragraph has been engaged in, then plaintiffs shall proceed against defendants therefor, if at all, by taking action pursuant to Business and Professions Code sections 17200 et seq. and 17500 et seq., or the applicable Health and Safety Code sections, or any other statutory provisions, but not by direct enforcement of this judgment, as for example, by way of contempt.

(3) Nothing contained in this Section T shall be deemed to be a limitation on any other provision, or the method of enforcement of any other provision, of this judgment nor the penalties, if any, which may be available under the provisions of Sections 17207 and 17535.5 of the California Business and Professions Code.

4. Whenever a "reasonable basis" for a representation or claim is required pursuant to the terms of this judgment, such basis does not exist if the defendants knew or in the excercise of reasonable care should have known that the representation or claim was untrue or misleading at the time it was made.

5. A. Defendants shall not establish, maintain or operate a marketing program in which:

(1) A participant pays a valuable consideration for the chance in whole or in part, to receive, either directly or indirectly, compensation, which is based on other than retail sales for introducing one or more additional persons into

-9-

Exhibit 48
583

participation in defendants' marketing program or for the chance to receive compensation, either directly or indirectly, when the newly introduced participant introduces a new participant into defendants' marketing program;

(2) Any compensation, however denominated (including but not limited to "commissions," "overrides," "achievement bonuses," or any term of similar import), defendants pay or participants receive is based upon anything other than the retail sale of defendants' products; and

(3) A participant can obtain any specific level in defendants' marketing program based upon criteria other than the amount of retail sales made by the participant or person(s) introduced into defendants' marketing program by the participant.

B. Defendants shall be in compliance with this Section 5, as long as a verification or documentation system they implement allows them, at any given point in time, to verify or document to plaintiffs that any and all participants who receive commissions, bonuses, overrides and/or advancement from defendants in defendants marketing program, after entry entry of this judgment, are based on retail sales made by or through such participant(s) or others introduced directly or indirectly under participant(s). Plaintiffs shall not seek such verification or documentation prior to 90 days after entry of this judgment, and defendants shall be in compliance with this verification or documentation requirement if their records are current and accurate to a point in time which does not precede plaintiffs' request for verification

-10-

Exhibit 48
584

or documentation by more than 90 days. Plaintiffs' request for verification or documentation of retail sales shall be made to defendants counsel of record.

C. The term "retail sale" as used in this Section 5 means a sale of defendants' product(s) in any of the following situations: (1) to persons who are not part of defendant's marketing program or distribution system; or, (2) to persons who are not buying to become part of defendants' marketing program or distribution system; or, (3) to persons who, although desirous of becoming or who are a part of defendants' marketing plan or distribution system are buying for their own personal or family use.

6. Notwithstanding anything to the contrary herein, defendants shall not be in violation of this final judgment and permanent injunction by advertising, offering or selling products:

A. In compliance with Federal regulations relating to foods for special dietary use as such regulations are adopted by California Health and Safety Code Section 26208 or any successor sections; provided however, advertisements or offers which exceed the scope of such regulations or relate to issues not covered by such regulations are to that extent, subject to the provisions of Section 3.

B. In compliance with guidelines established and approved by the Federal Food and Drug Administration in over-the-counter monographs; or other Federal Food and Drug Administration criteria, provided however, advertisements or offers which exceed the scope of such guidelines or relate to issues not

-11-

Exhibit 48
585

covered by such guidelines are to that extent, subject to the provisions of Section 3.

C. In compliance with California Health and Safety Code Sections 26000 through 26851, commonly known as the Sherman Food, Drug and Cosmetic Act.

D. Which are introduced after the date of this judgment or which are current but which in a material manner have been reformulated and for which there is a reasonable basis to support any claims or representations made for such products.

E. For which there is a newly acquired reasonable basis to support any claims or representations made for such products.

F. In manner now prohibited by law but which subsequently becomes legally permissible.

7. Defendants shall not represent in advertising that their marketing plan or product claims have been approved by this court, the California Attorney General's office, the California Department of Health Services, the Santa Cruz County District Attorney's office or any other governmental agency. Provided, however, defendants may represent, after the entry of this judgment, that the action evidenced by the complaint on file herein, has been settled and is no longer pending and defendants in conformity with the provisions hereof can legally continue to conduct business in California.

8. A. Defendant, Herbalife, is hereby ordered to pay to Plaintiff, State of California, the sum of $850,000.00, as

-12-

Exhibit 48
586

and for reimbursement to plaintiffs for costs, attorneys fees, expenses of investigation and other expenses and pursuant to Business and Professions Code Sections 17206 and 17536.

B. Payment is to be made at the office of the Attorney General of the State of California, 110 West "A" Street, Suite 700, San Diego, California 92101. Payment, if made by check, is to be made to the order of the California Attorney General. Payments shall be made according to the following schedule:

1.  Upon Filing of Judgment         $75,000.00
    120 Days After Filing            75,000.00
        First Period                              $150,000.00

2.  December 15, 1987               $50,000.00
    April 15, 1988                   50,000.00
    August 15, 1988                  50,000.00
        Second Period                             $150,000.00

3.  October 15, 1988                $35,000.00
    December 15, 1988                35,000.00
    February 15, 1989                35,000.00
    April 15, 1989                   35,000.00
    July 15, 1989                    35,000.00
        Third Period                              $175,000.00

4.  October 15, 1989                $35,000.00
    December 15, 1989                35,000.00
    February 15, 1990                35,000.00
    April 15, 1990                   35,000.00
    July 15, 1990                    35,000.00
        Fourth Period                             $175,000.00

5.  September 15, 1990              $40,000.00
    December 15, 1990                40,000.00
    March 15, 1991                   40,000.00
    June 15, 1991                    40,000.00
    September 15, 1991               40,000.00
        Fifth Period                              $200,000.00

C. Two Hundred Thousand Dollars ($200,000.00) of said $850,000.00 payment is to reimburse the California

-13-

Exhibit 48
587

Department of Health Services for its attorneys fees, costs of investigation and other expenses; said Department shall be entitled to one-quarter (1/4) of each payment received until the full amount of its said reimbursement is received by it.

D. If defendant Herbalife is more than twenty-five days late in making any scheduled payment the entire unpaid balance shall be due and payable if thereafter and within five days after Herbalife receives written notice of its failure to make such scheduled payment it further fails to make the same.

9. Defendant Mark Hughes is hereby ordered to post security with plaintiffs in the amount of $400,000.00, or in the aggregate amount due to plaintiffs pursuant to Section 8, above, whichever amount is less, from time to time. In the event defendant Herbalife defaults in any payment due pursuant to Section 8, above, plaintiff may collect from said security the amount due pursuant to this judgment, to a maximum amount of $400,000.00. In no event shall the amount paid by defendant Herbalife and the amount collected by plaintiff from the security posted by defendant Hughes, exceed the total amounts to be paid pursuant to Section 8, above. Such security may consist of cash, cash equivalents, personal or real property, marketable securities, or appropriate sureties. If during the course of the payments required to be made hereunder, plaintiff and Mark Hughes agree to a substitution of security designated above, such new security as agreed upon may be substituted.

10. To insure compliance with the injunctive provisions

-14-

Exhibit 48
588

of this judgment, defendants shall give a full copy of or a summary of the injunctive provisions of this judgment to each officer and each director, who controls, manages, directs or otherwise takes part in developing advertisements for defendants' products or defendants' marketing plan. Defendants shall report to plaintiffs on compliance with this Section within thirty days after entry of judgment.

11. In the event that plaintiff or their counsel become informed and believe that defendants are violating any provision of this judgement, prior to initiating any enforcement action plaintiffs, through the office of the attorney general to which payments hereunder are last made, shall give defendants written notice by mail or otherwise of the nature of the alleged violation and thirty days to undertake correction thereof. If defendants fail to undertake and diligently pursue appropriate corrective activities plaintiffs may then institute such legal action as is appropriate under the law. Provided, however, if plaintiffs determine, in their sole discretion, that the best interest of the people of the State of California require action plaintiffs may proceed with or without first giving the notice and opportunity to correct which is provided for herein.

12. A. Jurisdiction is retained for the purpose of enabling any party to this final judgment to apply to the court any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this final judgment, for the modification of any of the injunctive provisions hereof, for the enforcement or

-15-

Exhibit 48
589

compliance herewith, for relief herefrom, and for the punishment of violations hereof.

B. The right to seek relief pursuant to this Section 12 shall include the right to seek to have the injunctive provisions of this judgment terminated as to either or both defendants because, for example, the defendant's conduct has for a sufficient period of time indicated that the public interest does not require the continuation of this injunction.

C. (1) If any proceeding is initiated or sought to be maintained by or against a defendant hereto pursuant to the provision of this Section 12 or any other provision of this judgment the venue therefor shall be determined in accordance with generally applicable law for a period of one year after the date of this judgment, after that period the venue therefor shall be in the Superior Court of the County of Los Angeles and, upon motion of any party or upon the Courts own motion the venue shall be so transferred.

(2) A motion to change the venue of this action to the Superior Court of the County of Los Angeles may be made at any time.

13. Whenever, by the express terms of this judgment, a notice shall or may be given to a party, such notice may be given to the party's then current attorney of record or to the party itself.

14. This final judgment shall take effect immediately upon the entry thereof.

15. The Clerk is ordered to enter this final judgment forthwith.

-16-

Exhibit 48
590

1  Dated: October  14 , 1986
2
3                                    _____
4                                    JUDGE OF THE SUPERIOR COURT

-17-

Exhibit 48
591