JONATHAN C. DICKEY, SBN 88226
JDickey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

DANIEL S. FLOYD, SBN 123819
DFloyd@gibsondunn.com
ALEXANDER K. MIRCHEFF, SBN 245074
AMircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants
Herbalife Ltd., Michael O. Johnson,
Desmond Walsh, and John DeSimone

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE HERBALIFE, LTD. SECURITIES LITIGATION | Case No. 2:14-CV-02850-DSF (JCGx)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

In accordance with Federal Rule of Evidence 201, Defendants Herbalife Ltd. ("Herbalife"), and Michael O. Johnson, Desmond Walsh, and John DeSimone (collectively, the "Individual Defendants") respectfully request that the Court take judicial notice of, or consider under the doctrine of incorporation by reference, the following documents in the concurrently filed Declaration of Daniel S. Floyd submitted in connection with Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Complaint"):

| | |
|---|---|
| Exhibit 1 | Herbalife's Form 10-K for the period ending December 31, 2009, filed with the U.S. Securities and Exchange Commission ("SEC") on February 23, 2010 |
| Exhibit 2 | Herbalife's Form 10-K for the period ending December 31, 2010, filed with the SEC on February 22, 2011 |
| Exhibit 3 | Herbalife's Form 10-K for the period ending December 31, 2011, filed with the SEC on February 21, 2012 |
| Exhibit 4 | Herbalife's Form 10-K for the period ending December 31, 2012, filed with the SEC on February 19, 2013 |
| Exhibit 5 | Herbalife's Form 10-K for the period ending December 31, 2013, filed with the SEC on February 18, 2014 |
| Exhibit 6 | Herbalife's Form 10-Q for the period ending March 31, 2011, filed with the SEC on May 2, 2011 |
| Exhibit 7 | Herbalife's Form 10-Q for the period ending June 30, 2011, filed with the SEC on August 1, 2011 |
| Exhibit 8 | Herbalife's Form 10-Q for the period ending September 30, 2011, filed with the SEC on October 31, 2011 |
| Exhibit 9 | Herbalife's Form 10-Q for the period ending March 31, 2012, filed with the SEC on April 30, 2012 |
| Exhibit 10 | Herbalife's Form 10-Q for the period ending June 30, 2012, filed with the SEC on July 30, 2012 |

| | |
|---|---|
| Exhibit 11 | Herbalife's Form 10-Q for the period ending September 30, 2012, filed with the SEC on October 29, 2012 |
| Exhibit 12 | Herbalife's Form 10-Q for the period ending March 31, 2013, filed with the SEC on April 29, 2013 |
| Exhibit 13 | Herbalife's Form 10-Q/A for the period ending March 31, 2013, filed with the SEC on December 16, 2013 |
| Exhibit 14 | Herbalife's Form 10-Q for the period ending June 30, 2013, filed with the SEC on July 29, 2013 |
| Exhibit 15 | Herbalife's Form 10-Q for the period ending September 30, 2013, filed with the SEC on October 28, 2013 |
| Exhibit 16 | Herbalife's Form 10-Q for the period ending March 31, 2014, filed with the SEC on April 28, 2014 |
| Exhibit 17 | Herbalife's Form 10-Q for the period ending June 30, 2014, filed with the SEC on July 28, 2014 |
| Exhibit 18 | Herbalife's Form 8-K for the period ending May 1, 2012, filed with the SEC on May 2, 2012 |
| Exhibit 19 | Forms 4 concerning Michael Johnson's stock sales during Plaintiffs' proposed class period and for the six months preceding it |
| Exhibit 20 | Forms 4 concerning Desmond Walsh's stock sales during Plaintiffs' proposed class period and for the six months preceding it, as well as Walsh's purchases of Herbalife stock after July 28, 2014 |
| Exhibit 21 | Forms 4 concerning John DeSimone's stock sales during Plaintiffs' proposed class period and for the six months preceding it, as well as DeSimone's purchases of Herbalife stock after July 28, 2014 |
| Exhibit 22 | Herbalife's Press Release, entitled "Herbalife Announces Results of Study on Distributors and End Users in the U.S.," dated June 11, 2013 |

| | |
|---|---|
| Exhibit 23 | Herbalife's Press Release, entitled "Herbalife Ltd. Announces Second Quarter 2014 Results and Raises 2014 Earnings Guidance," dated July 28, 2014 |
| Exhibit 24 | Excerpts of a PowerPoint presentation, entitled "Herbalife Investor Day Presentation," dated January 10, 2013 |
| Exhibit 25 | Excerpts of a transcript of Herbalife's May 1, 2012 earnings conference call |
| Exhibit 26 | An article published by *The New York Times* on October 25, 2014, entitled "Bill Ackman and His Hedge Fund, Betting Big" |
| Exhibit 27 | An article published by *The New York Times* on December 20, 2012, entitled "Ackman Outlines Bet Against Herbalife" |
| Exhibit 28 | An article published by *The New York Times* on January 10, 2013, entitled "What's at the Center of the Debate Over Herbalife" |
| Exhibit 29 | An article published by *The New York Times* on January 9, 2013, entitled "S.E.C. Opens Investigation Into Herbalife" |
| Exhibit 30 | An article published by the *New York Post* on July 17, 2013, entitled "FTC Herbalife meeting spicy" |
| Exhibit 31 | An article published by *The New York Times* on March 5, 2013, entitled "In Herbalife 'Short War,' Hedge Funds Miss the Target" |
| Exhibit 32 | An article published by *The New York Times* on May 1, 2012, entitled "Einhorn Questions Prompt Selloff at Herbalife" |
| Exhibit 33 | An article published by *Reuters* on May 1, 2012, entitled "Herbalife shares swoon on Einhorn queries" |
| Exhibit 34 | An article published by *Business Insider* on December 19, 2012, entitled "Bill Ackman Is Short Herbalife And The Stock Is Diving" |
| Exhibit 35 | An article published by *Reuters* on December 20, 2012, entitled "Pershing Square's Ackman shorts Herbalife; stock skids" |

| Exhibit 36 | An article published by *TheStreet* on December 21, 2012, entitled "Herbalife Defenders Get Personal With Ackman, Shorts" |
|---|---|
| Exhibit 37 | An article published by *The New York Times* on January 23, 2014, entitled "Senator Is Lobbying for Inquiry on Herbalife" |
| Exhibit 38 | An article published by *Bloomberg* on January 23, 2014, entitled "Herbalife Falls as Senator Calls for Probe of Business Practices" |
| Exhibit 39 | An article published by *Fox Business* on January 23, 2014, entitled "Herbalife Sells Off as U.S. Senator Calls for Pyramid Scheme Probe" |
| Exhibit 40 | An article published by *Business Insider* on January 23, 2014, entitled "Herbalife is Tanking" |
| Exhibit 41 | An article published by *The Boston Globe* on March 15, 2014, entitled "Markey may have exaggerated claims about Herbalife" |
| Exhibit 42 | An article published by *The New York Times* on March 12, 2014, entitled "F.T.C. Inquiry Into Herbalife Prompts Big Share Selloff" |
| Exhibit 43 | An article published by *The Wall Street Journal* on March 12, 2014, entitled "Federal Trade Commission Starts Herbalife Probe" |
| Exhibit 44 | An article published by *MarketWatch* on July 28, 2014, entitled "Herbalife slumps in after hours as earnings fall short" |
| Exhibit 45 | An article published by the *Los Angeles Times* on July 28, 2014, entitled "Herbalife profits are below expectations; shares fall after-hours" |
| Exhibit 46 | An article published by the *Los Angeles Business Journal* on July 19, 2010, entitled "Herbalife leads lean, mean pack of profitability" |
| Exhibit 47 | An article published by the *Miami Herald* on October 19, 2009, entitled "Do homework before starting home business" |

| | |
|---|---|
| Exhibit 48 | The Final Judgment stipulated and consented to by the State of California and Herbalife, filed on October 15, 1986 |

Consideration of these documents is appropriate for the reasons set forth below.

## I. THE LEGAL STANDARD

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of relevant facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). This includes facts that are "generally known within the trial court's territorial jurisdiction," and facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Facts subject to judicial notice may be considered on a motion to dismiss. *E.g.*, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060 (C.D. Cal. 2012).

The separate doctrine of "incorporation by reference" also permits consideration of "a document when a 'plaintiff's claim depends on the contents of a document' and 'the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.'" *E.g.*, *Falkenberg v. Alere Home Monitoring, Inc.*, 2014 WL 5020431, at *1 n.1 (N.D. Cal. Oct. 7, 2014) (quoting *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)). Under such circumstances, the document "becomes part of the complaint and the court accordingly assumes the truth of its contents for the purposes of ruling on motion to dismiss pursuant to Rule 12(b)(6)." *E.g.*, *In re Ubiquiti Networks, Inc. Sec. Litig.*, --- F. Supp. 2d ----, 2014 WL 1254149, at *4 n.2 (N.D. Cal. Mar. 26, 2014) (citing *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003)).

The Exhibits to the Declaration of Daniel S. Floyd referenced above may be considered for one or both of these reasons.

## II. THE DOCUMENTS MAY BE CONSIDERED

### A. Documents Filed with the United States Securities and Exchange Commission.

#### 1. Herbalife's Forms 10-K, 10-Q, and 8-K.

The Court may take judicial notice of Herbalife's SEC filings attached as Exhibits 1–18.  It is well established that a court may take judicial notice of documents that are required to be filed with the SEC.  *See, e.g.*, *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) ("We . . . may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings."); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1158 (C.D. Cal. 2007) (in ruling on a motion to dismiss, "the court may consider public filings, including SEC filings" (internal citations and emphases omitted)).  This includes Forms 10-K, 10-Q, and 8-K. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d at 1062 (taking judicial notice of defendant's Forms 10-K, 10-Q, and 8-K); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *1 (C.D. Cal. May 23, 2008) (granting defendants' request for judicial notice of certain documents that defendants filed with the SEC including Forms 10-K and 10-Q).  Accordingly, the Court may take judicial notice of the SEC filings attached as Exhibits 1–18.

#### 2. The Individual Defendants' Forms 4.

The Court also may take judicial notice of the Individual Defendants' Forms 4 attached as Exhibits 19–21.  A court may take judicial notice of Forms 4 even if they are not expressly referenced in the complaint.  *See, e.g.*, *City of Royal Oak Ret. Sys.*, 880 F. Supp. 2d at 1059 ("[C]ourts may take judicial notice of SEC Forms 4, even when not referenced in the pleading, to prove that stock sales were made pursuant to a Rule 10b5–1 trading plan."); *Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*, 2012 WL 685344, at *8 n.5 (N.D. Cal. Mar. 2, 2012) (taking judicial

notice of SEC Forms 4 describing individual defendants' stock sales although they were not referenced in the complaint); *see also Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *7 n.5 (N.D. Cal. June 8, 2011) (taking judicial notice of SEC filing not referenced in the complaint).  The Forms 4 are "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Cement Masons & Plasterers Joint Pension Trust*, 2012 WL 685344, at *8 n.5 (quoting Fed. R. Evid. 201).  Moreover, the Court may consider the contents of the Forms 4 in determining whether Plaintiffs have sufficiently pled scienter.  *Id.* at *8 (observing, based on stock sales described in individual defendants' Forms 4, that plaintiffs failed to allege a motive); *City of Royal Oak Ret. Sys.*, 880 F. Supp. 2d at 1069 (taking judicial notice of defendants' Forms 4 and holding that stock sales described therein did not support a strong inference of scienter); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1352 n.3 (S.D. Cal. 1998) (taking judicial notice of individual defendant's Form 4, although plaintiffs did not allege any stock sales by defendant, and observing that the purchase of stock and lack of sales during the class period negated an inference of motive).

### B. Press Releases, Investor Presentation, Conference Call Transcript, and News Reports.

The Court also may take judicial notice of the press releases, investor PowerPoint presentation, conference call transcript, and news articles that are attached as Exhibits 22–47.  Taking judicial notice of these documents "is appropriate for show[ing] 'that the market was aware of the information'" in those documents.  *In re Am. Apparel*, 855 F. Supp. 2d at 1062 (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)); *see also In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 979–80 (N.D. Cal. 2010) (granting defendants' request for judicial notice of conference call transcripts, PowerPoint presentations, and news articles); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 864 (N.D. Cal. 2004) (taking judicial notice of press releases, conference call transcripts, and news

reports and observing that "the court may take judicial notice of information that was publicly available to reasonable investors at the time the defendant made the allegedly false statements"). Indeed, "[c]ourts in the Ninth Circuit routinely take judicial notice of press releases." *In re Am. Apparel*, 855 F. Supp. 2d at 1062 (listing examples).

## C. The 1986 Consent Order.

The Court may take judicial notice of the 1986 Consent Order with the California Attorney General attached as Exhibit 48 because it is a matter of public record. *Intri–Plex Techs., Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (courts may take judicial notice of "matters of public record" that are not "subject to reasonable dispute"); *Doe v. Mann*, 415 F.3d 1038, 1040 n.3 (9th Cir. 2005) (taking judicial notice of records related to proceedings in state court). Consideration of this document is also appropriate under the doctrine of incorporation by reference as it is explicitly referenced in the Complaint. *See infra* at II.D.

## D. Documents Referenced in the Complaint.

Herbalife and the Individual Defendants also request that the Court consider certain documents that are referenced and/or quoted in the Complaint. It is well established that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Ritchie*, 342 F.3d at 908 (explaining that a document not attached to the complaint but referenced therein may be considered on defendant's motion to dismiss); *In re Wet Seal*, 518 F. Supp. 2d at 1157–58 (noting that the court may consider "other matters of public record such as press releases, analyst reports, news articles, and conference call transcripts in cases such as this, where they are relied upon by the complaint"); *In re Am. Apparel*, 855 F. Supp. 2d at 1062 (noting that certain news articles were "explicitly referenced in the

complaint, making consideration of them proper under the incorporation by reference rule.").

Furthermore, the *full text* of documents referenced or cited in a complaint may be considered even though the complaint quotes only portions of those documents. *See, e.g.*, *In re Wet Seal*, 518 F. Supp. 2d at 1158 ("[O]n a motion to dismiss securities fraud claims, 'the court may consider the full text of the relevant documents to determine whether the plaintiffs have alleged material misrepresentations or omissions,' without converting the motion to a motion for summary judgment." (quoting *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2004))); *In re Autodesk, Inc., Sec. Litig.*, 132 F. Supp. 2d 833, 837–38 (N.D. Cal. 2000) (A "defendant may attach to a 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim.  Thus, the court may consider the full text of a document the complaint quotes only in part." (citation omitted)).

Accordingly, because they are referenced and/or quoted in the Amended Complaint, the doctrine of incorporation by reference provides an alternate basis for the Court to consider Exhibits 2–18, 23–25, 29, and 48.

### III.   CONCLUSION

For the foregoing reasons, Defendants' respectfully request that the Court take judicial notice of, or consider under the doctrine of incorporation by reference, the exhibits to the Declaration of Daniel S. Floyd submitted in connection with Defendants' Motion to Dismiss the Complaint.

DATED:  November 3, 2014                GIBSON, DUNN & CRUTCHER LLP

By:   */s/ JONATHAN C. DICKEY*
         JONATHAN C. DICKEY
Attorneys for Defendants