JONATHAN C. DICKEY, SBN 088226
jdickey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

DANIEL FLOYD, SBN 123819
dfloyd@gibsondunn.com
ALEXANDER K. MIRCHEFF, SBN 245074
amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants
Herbalife Ltd., Michael O. Johnson,
Desmond Walsh, and John DeSimone

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE HERBALIFE, LTD. SECURITIES LITIGATION | CASE NO. 2:14-cv-02850-DSF (JCGx)<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date: February 9, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 840<br>255 East Temple St.<br>Los Angeles, CA 90012<br>Judge: Hon. Dale S. Fischer |

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................4

    A. The Opposition Fails to Show That Herbalife Made Any Material Misstatements or Omissions Because Herbalife Repeatedly and Specifically Informed Investors of the Nature of its Business Model.......4

    B. The Opposition Fails to Demonstrate a Strong Inference of Scienter .......6

        1. Insider Trading Allegations ...............................................................6

        2. Confidential Witnesses .......................................................................9

        3. "Core Operations" Theory ...............................................................10

        4. The More Compelling, Non-Culpable Inferences ..........................10

    C. The Opposition Fails to Refute the Ninth Circuit Authority Foreclosing Loss Causation ........................................................................11

    D. The Opposition Fails to Show That Lead Plaintiffs Have Standing........12

III. CONCLUSION ...................................................................................................12

Gibson, Dunn & Crutcher LLP

i

REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page

### Cases

*Abuhamdan v. Blyth, Inc.*,
  9 F. Supp. 3d 175 (D. Conn. 2014) .................................................................. 5, 6

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ............................................................................. 10

*Cats v. Protection One, Inc.*,
  2001 WL 34070630 (C.D. Cal. June 4, 2001) .................................................... 5

*FTC v. BurnLounge, Inc.*,
  753 F.3d 878 (9th Cir. 2014) .......................................................................... 4, 10

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ............................................................................... 5

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................. 6

*In re NVIDIA Corp. Sec. Litig.*,
  2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ..................................................... 7

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ............................................................................. 9

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ....................................................... 8

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ............................................................................... 7

*In re Teledyne Def. Contracting Derivative Litig.*,
  849 F. Supp. 1369 (C.D. Cal. 1993) .................................................................... 6

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................. 7

*In re VeriFone Holdings, Inc., Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ............................................................................... 7

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) .................................................................. 3, 11, 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2007) ............................................................................. 8

*Oregon Pub. Emps. Ret. Fund v. Apollo Group Inc.*,
  --- F.3d ----, 2014 WL 7139634 (9th Cir. Dec. 16, 2014) ............ 1, 2, 3, 5, 6, 10, 11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ............................................................................. 5

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Teachers' Ret. Sys. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) .................................................................................. 11, 12

*Stocke v. Shuffle Master, Inc.*,
   615 F. Supp. 2d 1180 (D. Nev. 2009) ........................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................................................... 2

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................................................................... 9

## I. INTRODUCTION

Plaintiffs' Opposition brief devotes much effort to regurgitating its repetitive and conclusory allegations that Herbalife's business model is an uncharged pyramid scheme. Plaintiffs' argument remains based on the self-interested and unsubstantiated attacks on Herbalife made by Bill Ackman, manager of a hedge fund with a multi-billion dollar short position, whose sole interest is to drive down the Company's stock price. But Plaintiffs fail to address a basic, fatal flaw in their complaint. As Defendants demonstrated in their Motion to Dismiss, every investor in Herbalife—a highly successful company selling health and fitness products for more than three decades—received accurate, detailed disclosures about its MLM model, its financial performance, and the business, regulatory, and legal risks associated with its business. This fact defeats any claim of securities fraud as a matter of law, and requires dismissal under controlling Ninth Circuit case law, most recently *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, --- F.3d ----, 2014 WL 7139634 (9th Cir. Dec. 16, 2014), which held that an investor cannot knowingly invest in a company, having been aware of its business model and attendant risks, and then sue for securities fraud claiming that he was somehow misled or suffered any loss as a result of those risks. Not surprisingly, the Opposition fails to meaningfully address *Apollo*, or the rest of Defendants' motion.

***No Misrepresentations or Omissions.*** Plaintiffs do not dispute that the facts contained in Defendants' Requests for Judicial Notice are properly considered at this stage. These facts demonstrate that the Company has always disclosed that its product marketing is done through grass-roots marketing, including recruitment, and that as a result the Company might be subjected to pyramid-scheme allegations and related risks, but that the Company operates as a legitimate MLM. Moreover, the Opposition does not dispute that Herbalife has an ongoing, 34+-year track-record of legitimate operations, including *billions* of dollars annually in actual product sales. Herbalife's

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

*decades-long record* of robust product sales defeats any credible argument that the Company operates as a pyramid scheme.[1]

Without facts to support a misrepresentation claim, the Opposition concedes that this lawsuit rests on conclusory allegations that Defendants "failed to disclose the inherent illegitimacy of the Company's pyramid-scheme structure." Opp. at 2. The Ninth Circuit in *Apollo* rejected a very similar "omissions theory," where, as here, the complaint was based on the alleged non-disclosure of risks of purportedly wrongful business practices that *had been publicly disclosed to investors*. 2014 WL 7139634, at *6. As the *Apollo* court aptly put it, "[t]he Plaintiffs' omissions theory fails to state a claim because the Defendants clearly disclosed material information to investors. Investors knew that they were investing in . . . an institution whose business model relied on recruiting." *Id.*

*No Scienter.* The Opposition also fails to muster any *facts* showing a cogent and compelling inference of scienter under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). First, the Opposition's heavy reliance on Plaintiffs' CW allegations is badly misplaced. The two CWs—one employed by the Company for mere months and the other responsible merely for event planning—have only alleged that the Company promotes recruiting as part of its overall business model (as it has always disclosed). The CWs do *not* suggest that Herbalife promotes recruiting unrelated or *to the exclusion of product sales*—a critical difference between a pyramid scheme and a legitimate MLM like Herbalife. There is nothing wrong with seeking to interest potential customers and members in a consumer products business, particularly when that is exactly what Herbalife has always disclosed that it does.

---

[1] The Opposition stops far short of arguing that Herbalife's product sales somehow are fictitious or accounted for improperly. At most it merely repeats the (incorrect) claims that Herbalife's flagship Formula 1 protein shake is allegedly overpriced and competes against products backed by much larger advertising budgets. But that is not remotely the same thing as improperly accounting for sales, or running a fraudulent business; indeed, the Opposition identifies no particularized allegations that the Company's reported *and audited* financial results were misstated in any way.

Plaintiffs' reliance on Defendants' stock sales to prove scienter also is unavailing. Plaintiffs make no arguments whatsoever concerning the timing or amounts of sales by Defendants Walsh and DeSimone, effectively conceding that those allegations lack merit. And Plaintiffs do not challenge the judicially noticeable facts showing that Defendant Johnson was a *net acquirer* of Company stock during the class period and that 100% of his sales were predetermined as to amount and timing by virtue of his Rule 10b5-1 trading plan—facts that weigh strongly against scienter.

***No Loss Causation.*** The Ninth Circuit's decision in *Apollo* holds that loss causation must be pled with the particularity required by Rule 9(b). 2014 WL 7139634, at *4. *Apollo* also rejected attempts to plead a corrective disclosure based on announcements of an "investigation"—which "does not 'reveal fraudulent practices to the market' and therefore is insufficient to establish loss causation." *Id.* at *7; *see also Loos v. Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014). And under this jurisprudence, simply stating, as Plaintiffs do here, that an earnings statement revealed a fraud, without any accompanying revelation of fraudulent statements, is not enough to show loss causation. *Apollo*, 2014 WL 7139634, at *7; *Loos*, 762 F.3d at 888.

Here, the Opposition fails to point to any disclosure that ever "revealed" that the Company is a pyramid scheme (because it is not). As the Opposition tacitly concedes, Plaintiffs' allegations trace almost entirely to Ackman, an extraordinarily self-interested short-seller who, in addition to being a defendant himself in connection with alleged insider trading on one of his other positions, has failed to persuade either the market or regulators about his baseless charges concerning Herbalife. Plaintiffs also fail to point to any corrective disclosure by Herbalife stating that it engaged in any wrongdoing that misled investors. And under *Apollo* and *Loos*, their conclusory reliance on the Company's July 2014 earnings release as a purported corrective disclosure is insufficient as a matter of law, as they do not even attempt to connect anything in particular about that earnings release to the supposed misstatements. There was no disclosure of fraud, and no fraud in the first place.

## II. ARGUMENT

### A. The Opposition Fails to Show That Herbalife Made Any Material Misstatements or Omissions Because Herbalife Repeatedly and Specifically Informed Investors of the Nature of its Business Model

Plaintiffs have failed to identify any inaccurate or incomplete representation by Defendants about Herbalife's business. Nevertheless, Plaintiffs argue that their conclusory allegations, lacking particularity and foundation, show that Herbalife operates as a pyramid scheme. That is false. But more importantly, Plaintiffs cannot rely on such pleading as if they are government regulators to make out a viable complaint for *securities fraud*.

Plaintiffs' attack on Herbalife's business remains wholly conclusory and wholly divorced from the applicable legal standard. As just one telling example, Plaintiffs do not dispute that "[a]ll compensation [of members] is based solely upon product sales, not mere recruitment." Mot. at 9. This fact alone requires dismissal, because, as the Ninth Circuit has held, the "*sine qua non* of a pyramid scheme" is "recruitment with rewards *unrelated* to product sales"—the advisability of recruiting a team *to help sell more products* than one person could sell alone is simply part of the *disclosed* MLM model. *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 883–84 (9th Cir. 2014) (emphasis added). Moreover, Plaintiffs depend almost exclusively on the fallacy that a sale cannot be genuine if it goes to an in-network member, and that Herbalife was obligated to track and disclose the degree to which sales went to non-members. That is entirely wrong. The Ninth Circuit has expressly *rejected* this argument, concluding that "when participants bought packages in part for internal consumption . . . ," the participants were the "ultimate users" of the merchandise and "this internal sale alone does not make . . . a pyramid scheme." *Id.* at 887. Moreover, Plaintiffs do not challenge and indeed embrace Herbalife's disclosures—highlighted on the very first page of Defendants' opening brief—that millions of its members joined so that they could receive the 25% discount on products for their own use. Mot. at 1; Opp. at 8 n.5.

Furthermore, in arguing that Herbalife's financial results were misleading, Plaintiffs' Opposition simply repeats the complaint's conclusory allegations that Herbalife "inflated the suggested retail price of products in order to overstate retail sales." Opp. at 13. But as Defendants explained, Herbalife has always disclosed how it calculated "retail sales"—it has been explicit that this figure is not adjusted for distributor discounts, unlike "net sales." *E.g.*, Compl. ¶¶ 143–144. Plaintiffs do not even attempt to identify a GAAP violation, and they fail to explain how any investor could possibly have been misled by these disclosed definitions, or by anything else.[2]

Unable to identify a misstatement, Plaintiffs fall back on an omission theory. But that argument likewise flies in the face of clear Ninth Circuit authority holding that a claim is not actionable where, as here, the market already had been informed of the details and risks of the Company's business and operations, whether through the Company's disclosures, third-party reports, or other sources. *E.g.*, *Apollo*, 2014 WL 7139634, at *6; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057 (9th Cir. 2014); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 976–77 (9th Cir. 1999). In a futile attempt to avoid this dispositive authority, Plaintiffs wrongly and baselessly characterize Herbalife's risk disclosures as meaningless "boilerplate." Opp. at 15. This charge lacks support; Herbalife's risk disclosures are detailed and specific. Mot. at 10, 15–18, App'x A.[3] This case is indistinguishable from *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175 (D. Conn. 2014), in which the same (or less robust) types of disclosures defeated strikingly similar claims of securities

---

[2] The Opposition also makes the throwaway argument that Herbalife's allegedly inadequate internal controls rendered certain of its public statements false. But the Opposition fails to cite any particularized facts supporting this contention, rendering it irrelevant. *E.g., Cats v. Protection One, Inc.*, 2001 WL 34070630, at *15 (C.D. Cal. June 4, 2001).

[3] Over many years, Herbalife's public disclosures have included specific references to allegations made in civil litigation that Herbalife operated as a pyramid scheme, including a Belgian action filed against Herbalife in 2004, which was resolved in December 2013, when the Belgian Court of Appeals issued a final decision in favor of Herbalife. That action was explicitly disclosed in each of the Company's annual reports on Forms 10-K for the years in which that action was ongoing (2004 through 2013). App'x A at 6–7.

fraud. Incredibly, Plaintiffs characterize the complaint in *Abuhamdan* as being merely about "how to classify" data that "everyone possessed." Opp. at 16–17. That, too, is false. The court *specifically* held that the disclosure of "frequent turnover" in the company's distributor ranks (like Herbalife's disclosures) was "sufficient to inform investors" of the risks even "*though it did not quantify the precise turnover rate*." *Abuhamdan*, 9. F. Supp. 3d at 197–98. *Abuhamdan* remains highly persuasive, as underscored by Plaintiffs' resort to misleading characterizations of its holding.[4]

In attacking Herbalife's failure to disclose Plaintiffs' unfounded conclusion that Herbalife is a pyramid scheme, Plaintiffs also ignore the principle that "the federal securities laws do not require a company to accuse itself of wrongdoing." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004); *In re Teledyne Def. Contracting Derivative Litig.*, 849 F. Supp. 1369, 1381–83 (C.D. Cal. 1993) ("Directors and officers simply need not confess guilt to involvement in criminal conduct and breaches of fiduciary duties of care when such charges have not yet been brought, let alone proven."). Beyond conclusory claims, Plaintiffs fail to identify with particularity any material misrepresentations or omissions concerning how Herbalife operates, the sources of its revenues, or the legal and regulatory risks to its business.

**B.     The Opposition Fails to Demonstrate a Strong Inference of Scienter**

Not only do Plaintiffs fail to identify any specific facts known to Defendants suggesting that Herbalife constituted an illegal pyramid scheme—because there are no such facts—but they also fail to support their fallback allegations concerning insider trading or their conclusory allegations from supposed confidential witnesses.

**1.     Insider Trading Allegations**

Virtually the only allegations specific to the Individual Defendants concern their stock sales, which, contrary to the Opposition's arguments, do not remotely support a

---

[4] *Abuhamdan* likewise is not distinguishable on the basis that it did not involve "expressions of concern" by regulators, Opp. at 16, which "do[] not constitute a corrective disclosure" in any event. *Apollo*, 2014 WL 7139634, at *7; *see infra* Part II.C.

plausible inference of scienter.  *First*, the Opposition makes no argument whatsoever as to the stock sales by Defendants Walsh or DeSimone except for the price at which they sold, Opp. at 24, effectively conceding that their stock sales were not suspicious in either timing or amount and therefore that the stock sales of these two Defendants cannot support any inference of scienter as to them.

*Second*, as to Defendant Johnson, Plaintiffs rely heavily on his being a successful CEO who sold a portion of the significant stock he received as compensation from Herbalife, but those unremarkable allegations are insufficient to establish an inference of scienter and are trumpeted here because analysis of the relevant factors plainly undermine any such inference.  Plaintiffs do not dispute that Johnson "was a net acquirer of stock during the class period," nor do they even attempt to address Defendants' authority that "rejected [defendant's] stock sales as evidence of scienter" for that reason.  *In re NVIDIA Corp. Sec. Litig.*, 2011 WL 4831192, at *10 (N.D. Cal. Oct. 12, 2011); Mot. at 23–24.  Plaintiffs argue that acquisitions of stock pursuant to compensation plans, like Johnson's, are irrelevant in determining whether sales were suspicious in amount or percentage, and that only so-called "open market" purchases are relevant.  Opp. at 24.  They cite no authority for those propositions.  Plaintiffs' argument is directly contrary to Ninth Circuit holdings that an "officer's vested stock options" must be considered "in evaluating the proper proportions of their stock sales."  *E.g.*, *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 n.12 (9th Cir. 2002).

Plaintiffs also do not establish that the timing of the sales is suspicious, particularly given the very long class period.  Plaintiffs distort the import of the Rule 10b5-1 trading plans, which are offered not as an "absolute defense" but merely to demonstrate that Defendants' sales—including 100% of Johnson's and Walsh's sales—were predetermined as to amount and timing and therefore wholly innocent.  Trades made pursuant to trading plans "do not by themselves support an inference of scienter," as the Ninth Circuit has repeatedly held.  *In re VeriFone Holdings, Inc., Sec.*

*Litig.*, 704 F.3d 694, 704 (9th Cir. 2012); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008). Plaintiffs' purportedly contrary authorities are readily distinguishable.[5]

Plaintiffs also make the meritless contention that sales were suspicious simply because they were "at prices significantly higher than Herbalife's stock price . . . at the end of the class period." Opp. at 24. Even if true, this hardly supports a strong inference of scienter (otherwise, scienter could be alleged in a wide array of cases where stock prices decline over the putative class period for any number of reasons). Further, while Plaintiffs contend that many of Johnson's sales were "prior to the investigation announcements," *id.*, that argument, too, does not render Johnson's stock sales suspicious, as there is no allegation that Johnson had advance notice of the announcements, let alone accelerated his sales when he may have known that those announcements were imminent. Similarly, it is irrelevant that Johnson sold stock on May 1, 2012, the day that David Einhorn posed questions. *Id.* at 25. Herbalife already had made copious public disclosures concerning the risks associated with its business model, including the risk that regulators might view the Company as a pyramid scheme. Again, the sales were long-planned, and Plaintiffs do not suggest that Johnson somehow had advance notice of Einhorn's questions.[6]

---

[5] For example, in *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *16 (C.D. Cal. Oct. 1, 2013), only one of the five defendants' sales were pursuant to a trading plan, and even he made additional sales outside the plan. Here, 100% of Johnson's and Walsh's sales were under the plans, and no *facts* are pleaded to make it plausible that the plans were some subterfuge "to avoid the appearance of improper sales." *Id.* Similarly, in *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180 (D. Nev. 2009), the court actually rejected the argument that the timing of defendants' stock sales supported an inference of scienter.

[6] Plaintiffs' charts purporting to describe Johnson's sales, Opp. at 25, are grossly misleading, as they do not account for Herbalife's 2:1 stock split on May 17, 2011. Those charts therefore make it appear as though Johnson sold approximately twice as much stock after that date than he did for purposes of comparison to the prior periods. Nor do Plaintiffs plead any facts to suggest that the actual year-over-year changes were suspicious, as they omit any reference to Johnson's yearly compensation levels. *See id.*

Finally, Plaintiffs concede—as they must—that none of the Defendants sold stock within the two months prior to the only disclosure they controlled: the July 2014 earnings release (which did not reveal or constitute fraud in any event).  Opp. at 25.

### 2. Confidential Witnesses

Plaintiffs' reliance on allegations derived from their CWs betrays the total absence of necessary factual support for their hyperbolic assertions of fraud.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).  It is hardly "absurd" to conclude that CW1 was basically an "event planner"—indeed, Plaintiffs themselves acknowledge that CW1 was "responsible for overseeing the extravaganzas and other high-profile events."  Opp. at 21.  No facts suggest she was "in a position to be personally knowledgeable of" anything establishing or even suggesting that sales of genuine products were unimportant, much less not the primary way Herbalife or its members earn money.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).  The allegations attributed to CW1 that Herbalife was "in the business of recruitment" also are wholly conclusory.  As an MLM, it is well-known that Herbalife seeks to expand its customer base through face-to-face "recruitment"— another word for attracting customers.  Someone whose *only* job was to plan business events has no foundation to offer informed facts about Herbalife's overall business strategies, nor that Defendants were intentionally making misrepresentations, as opposed to appropriately disclosing the risks associated with a lawful MLM.

Similarly, CW2's statements that recruiting was necessary for advancement are wholly conclusory, and are entirely consistent with the simple fact that sales of products are easier to accomplish with teams of people than by one person working alone.  Plaintiffs mischaracterize their own allegations concerning CW2, who worked only for a very short time at Herbalife, and who *does not* say what the Opposition suggests:  that Defendants "purposefully did not track consumer demand and non-affiliate revenue data."  Compl. ¶ 66.  This argument is another in Plaintiffs' continuing attempts (contrary to *BurnLounge*) to characterize purchasers as people

who are not genuine "consumers" simply because they signed up to become Herbalife members, as many do for the product discount. Mot. at 1; Opp. at 8 n.5. Further, no facts remotely support the insinuation that Defendants "purposefully" selected which data to track in order to conceal a pyramid scheme. On the face of the allegations, neither CW has the experience nor senior management level responsibility for the business to support broad claims of uncharged business model illegality, and Plaintiffs' heavy reliance on their statements is telling.[7]

### 3. "Core Operations" Theory

Given the weakness of all of the Opposition's arguments discussed above, Plaintiffs resort to the "core operations" theory. In their opening brief, Defendants demonstrated why the Ninth Circuit precedents on this theory are inapplicable here. The Opposition does not address those arguments, much less overcome them. Plaintiffs identify no *facts* concerning the Company's business model—beyond those already disclosed—that were of such prominence that it would be "absurd" to believe the Individual Defendants did not know about them. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987–88 (9th Cir. 2008); Mot. at 26 n.15. For these reasons, Plaintiffs cannot impute any wrongful knowledge about Herbalife's "core operations" to the Individual Defendants in order to satisfy this theory.

### 4. The More Compelling, Non-Culpable Inferences

Not a single particularized fact supports any inference of scienter, despite Plaintiffs' laundry-list of conclusory allegations, *see* Opp. at 29. The facts collectively support a contrary inference. *E.g.*, *Apollo*, 2014 WL 7139634, at *6. Defendants' long record of success, extensive disclosures, and the explicit approval by the Ninth Circuit of the core practice at issue, *BurnLounge*, 753 F.3d at 887, all underscore the far more

---

[7] While Defendants will not comment at this stage of the litigation, they reserve their right to demonstrate to the Court later, if the motion to dismiss is not granted in full, that Plaintiffs' counsel have taken extreme liberties with the CWs' alleged statements.

plausible inference that Defendants believed they were appropriately disclosing the nature and risks associated with Herbalife's MLM business model.

### C. The Opposition Fails to Refute the Ninth Circuit Authority Foreclosing Loss Causation

Plaintiffs mischaracterize the Ninth Circuit's controlling holding in *Loos*, which, contrary to their suggestion, leaves no room to base an allegation of loss causation on "the announcement of an investigation, standing alone *and without any subsequent disclosure of actual wrongdoing*." 762 F.3d at 890 n.3 (emphasis added); *see also Apollo*, 2014 WL 7139634, at *7 (citing *Loos*). It follows that mere accusations by third parties—such as the self-interested charges leveled by Ackman—likewise cannot constitute corrective disclosures absent the revelation of a true fraud (not conjecture).

Likewise, despite conceding that *Apollo* requires them to plead loss causation with particularity, Plaintiffs make no effort to identify anything in particular about the July 2014 earnings release that supposedly revealed the falsity of any prior statements. They depend wholly upon the conclusory allegation that Herbalife "disclosed issues" about its operations—without any attempt to specify what those supposed "issues" were, much less to connect them in any way to the alleged misstatements. Opp. at 18. That is exactly the opposite of particularized pleading.

Finally, Plaintiffs' reliance on a non-controlling and readily distinguishable case from the Fifth Circuit, *Public Employees Retirement System of Mississippi, Puerto Rico Teachers' Retirement System v. Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014), is entirely misplaced. *Amedisys* involved Medicare billing fraud. Investigations had placed the company "under the spotlight of government scrutiny," and, thereafter, the company's "earnings dropped significantly because its employees could no longer continue exploiting Medicare reimbursements." *Id.* at 324. Here, Plaintiffs (again) make no effort to plead facts *with particularity* that connect the July 2014 earnings release to an actual disclosure of supposed fraudulent practices—a failing that is fatal under *Loos* and *Apollo* because it leaves the announcements of investigations to

"stand[] alone," "without any subsequent disclosure of actual wrongdoing." *Loos*, 762 F.3d at 890 n.3. And, in *Amedisys* there were actual governmental findings (by the Senate Finance Committee) that the company "ha[d] been taking advantage of the Medicare regulations." 769 F.3d at 325 n.6. There are no such findings alleged here, and nothing more than the "[s]peculation of wrongdoing" that even the Fifth Circuit held "cannot by itself rise to a corrective disclosure." *Id.* at 322.

### D. The Opposition Fails to Show That Lead Plaintiffs Have Standing

The Opposition shows a remarkable lack of candor in blithely asserting that it is the "exclusive, discretionary function of the [C]ourt" to consider, *sua sponte*, whether to apply the PSLRA's presumptive bar against professional plaintiffs who serve as lead plaintiffs in securities class actions more than five times in three years—a fact that the Oklahoma Firefighters now concedes here. This lack of candor is precisely the "evidence that the pension fund[] could not assume the duties of lead plaintiffs," which Oklahoma contends is missing. Opp. at 32–33 & n.40. And strikingly, Oklahoma *still* has not disclosed whether it was a net gainer during the class period, nor claimed to have disclosed all of its class-period transactions to this Court. *Id.* at 34. This evasiveness further undercuts Oklahoma's capacity to serve as Lead Plaintiff.

As to Atlanta Firefighters, the Opposition merely argues that Atlanta was "not a net gainer" *overall*, *id.*, but it does not even attempt to dispute (let alone confront) the fact that it was a net gainer "*during the class period*." Mot. at 34 & n.17 (emphasis added). Atlanta's class period *profits* means it "suffered no compensable damages recoverable" in this action, and therefore may not prosecute the case. *Id.*

### III. CONCLUSION

Defendants thus respectfully ask that the complaint be dismissed, with prejudice.

DATED: January 23, 2015  GIBSON, DUNN & CRUTCHER LLP

By: */s/ JONATHAN C. DICKEY*
JONATHAN C. DICKEY
Attorneys for Defendants

12
REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

## **PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 333 South Grand Avenue, Los Angeles, California 90071. On January 23, 2015, I caused the foregoing document (Defendants' Reply in Further Support of Their Motion to Dismiss Plaintiffs' Amended Complaint) to be served as follows:

**[X]** by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such electronic filing to counsel of record for all parties by operation of the Court's CM/ECF System.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on January 23, 2015, at Los Angeles, California.

*/s/ Lolita C. Gadberry*
Lolita C. Gadberry

Gibson, Dunn & Crutcher LLP