UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 14–2850 DSF (JCGx) | Date | 7/28/15 |
| Title | In re Herbalife, Ltd. Securities Litigation | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING in Part and DENYING in Part Defendants' Motion to Strike (Docket No. 98); GRANTING Defendants' Motion to Dismiss (Docket No. 95)

Plaintiff Oklahoma Firefighters Pension and Retirement System alleges that Herbalife, Ltd. and its Chief Executive Officer Michael O. Johnson violated federal securities laws by misrepresenting various aspects of Herbalife's business operations. The Court previously dismissed Plaintiff's First Amended Complaint (FAC) for failure to plead loss causation. (See Dkt. No. 87.) Because Plaintiff's scienter and material misrepresentation arguments were largely unpersuasive, dismissal likely would have been proper on those bases as well. (See id. at 13.)

Plaintiff's Second Amended Complaint (SAC) differs from the FAC in several respects. The FAC focused on broadly-framed misrepresentations concerning Herbalife's status as a legitimate multi-level marketing (MLM) company or an illegal pyramid scheme. The SAC more particularly identifies alleged misrepresentations concerning specific aspects of Herbalife's business and operations. The SAC has shortened the proposed class period by more than four months, likely a result of the Court's conclusion that Herbalife's July 2014 earnings report did not constitute a corrective disclosure. (See id. at 11.)

## Motion to Strike

Also new to the SAC are three expert reports, which Plaintiff offers to "buttress" its allegations. Defendants move to strike the expert reports on the ground that they are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

not "written instrument[s]" under Federal Rule of Civil Procedure 10(c)[1]. "Affidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Rose v. Bartle, 871 F.2d 331, 340 n.3 (3d Cir. 1989) ("The case law demonstrates, however, that the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'"). Consistent with Ritchie, multiple courts have determined that an expert report attached to a complaint is not a "written instrument" under Rule 10(c) and is, in some cases, properly stricken. See, e.g., Stuart v. Cadbury Adams USA, LLC, No. CV 09-6295 AHM (CWx), 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010); DeMarco v. DepoTech Corp., 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001). Other district courts have noted this case law, but denied motions to strike where the expert reports were not essential to the Court's decision and were used "merely to buttress" the plaintiff's contentions. See, e.g., In re MannKind Sec. Actions, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011).

The expert reports here do not form the basis of the SAC but rather appear to have been generated for purposes of prosecuting this litigation. The expert reports therefore do not constitute "written instrument[s]" under Rule 10(c). Defendants' motion to strike is GRANTED as to the three expert reports themselves. This ruling does not extend to any factual allegations in the SAC that were derived from the expert reports.[2]

Defendants' motion to strike is DENIED with respect to Defendants' request to remove Oklahoma as lead plaintiff. The Court previously "decline[d] to consider" whether Oklahoma should be replaced as lead plaintiff "unless a party claiming to be a more appropriate lead plaintiff brings that issue to the Court's attention." (Dkt. No. 83 at 2.) No such party has come forward, and Defendants have not convinced the Court that an alternative approach is necessary at this time.

---

[1] Federal Rule of Civil Procedure 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[2] The Court's ruling on the motion to dismiss would be the same even if the reports had not been stricken.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Motion to Dismiss

Defendants move to dismiss the SAC, asserting that it fails to plead material misrepresentations, loss causation, and scienter adequately. The Court concludes that Plaintiff has not plausibly pled scienter as to Herbalife or Johnson; therefore, it declines to consider loss causation or materiality.

To establish scienter, a plaintiff must "state with particularity facts giving rise to a strong inference that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987 (9th Cir. 2008) (internal quotation marks omitted). A "strong inference" is one that is "as cogent or as compelling as an opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009). Because scienter is an objective inquiry, "the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity." Gebhart v. S.E.C., 595 F.3d 1034, 1042 (9th Cir. 2010). "The stricter standard for pleading scienter naturally results in a stricter standard for pleading falsity, because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA." In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir. 2002), abrogation on other grounds recognized by South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008) (internal quotation marks omitted).

Plaintiff argues that a strong inference of scienter is supported by: (1) various allegations concerning Herbalife and its operations and (2) Johnson's trading history. (See Pl.'s Opp. at 21-25.) But Plaintiff does not sufficiently explain how the allegations concerning Herbalife, either individually or collectively, support an inference that Defendants acted with the requisite state of mind. Rather, without any analysis, Plaintiff suggests that the allegations speak for themselves. (See id. at 21 n.31 ("Taken together . . . these facts sufficiently [allege] scienter as to both Johnson and Herbalife.").) The Court fails to see how many of these allegations are even indicative of falsity. The listed allegations include, for instance, that multiple entities began investigating Herbalife's business practices; that "senior executives" expected "some form of disciplinary action" to follow; that Herbalife altered its business practices; and that Herbalife's creditors reduced the company's borrowing capacity. These allegations arguably permit the inference that Herbalife will be penalized for business practices consistent with those of pyramid schemes. The allegations do not, however, permit the inference that Defendants misrepresented Herbalife's operations with deliberate recklessness or an intent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

deceive.³ As discussed in the Court's prior order, Herbalife openly disclosed that it was susceptible to legal challenge precisely because its practices occupy the gray area between legitimate multi-level marketing company and illegal pyramid scheme. (See Dkt. No. 87 at 13.)⁴

Of the identified allegations, those that appear most relevant to establishing scienter are the allegations concerning Herbalife's retail sales. (See, e.g., SAC ¶¶ 35-41, 49, 135.) In 1986, Herbalife became subject to a permanent injunction that requires "Herbalife to implement a system to document its retail sales," and mandates that Herbalife "verify or document . . . that any and all participants who receive commissions, bonuses, overrides and/or advancement . . . are based on retail sales made by or through such participant(s) or others introduced directly or indirectly under participant(s)." (Id. ¶ 36.) Herbalife's 2010 Form 10-K acknowledged that Herbalife's officers and directors remained subject to the 1986 injunction, and that the injunction "required us to implement some documentation systems with respect to payments to our distributors." (Id. ¶ 130.) In conjunction with the foregoing, Plaintiff offers multiple allegations that arguably support the conclusion that tracking retail sales is material to investors because this is a key metric in determining whether Herbalife is a legitimate MLM or an unlawful pyramid scheme. (Id. ¶¶ 38-41, 46.)

Notwithstanding the apparent relevance of retail sales and the related injunction, in May 2012, Herbalife President Desmond Walsh publicly stated that Herbalife does not have the "exact percentage" of final product sales to out-of-network consumers because it lacks "visibility to that level of detail." (Id. ¶¶ 27, 44.) After being asked for an approximation, Walsh responded that "we believe that it's 70 percent or potentially in excess of that." (Id. ¶ 44.) The next day, Herbalife issued a Form 8-K that reinforced

---

³ Several of the allegations identified by Plaintiff – including those listed above – involve conduct or events that occurred well after the alleged misrepresentations. This fact undermines Plaintiff's claim that these allegations support an inference that Defendants possessed a particular mental state at the time of the alleged misrepresentations.

⁴ Plaintiff argues that Pershing Square's March 2014 presentation regarding Herbalife's operations in China revealed material misrepresentations and supports an inference of scienter. Herbalife's share price fell only 1.16% following this presentation. (SAC ¶¶ 170-171.) Plaintiff has presented no authority for the proposition that such a small change in share price supports a finding of materiality or loss causation. The Court also rejects Plaintiff's unsupported conclusion that allegations concerning the China presentation support an inference of scienter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Walsh's statements by asserting that "[w]e don't track this number and do not believe it is relevant to the business or investors." (Id. ¶ 45.) The 8-K added that "in order to minimize the risk of product being accumulated by distributors, the company has policies in place such as the 70% Rule, the Ten Customer Rule and the Buy Back policy." (Id.)[5]

When read in light of Plaintiff's allegations, Walsh's statement and the Form 8-K arguably render Herbalife's disclosure concerning the injunction a material misstatement; a reasonable investor likely would have been surprised to learn that Herbalife did not track sales to out-of-network individuals and was unable to do so. Missing, however, are specific "facts or evidence that show . . . that [D]efendants knew or with deliberate recklessness disregarded that" the statements concerning Herbalife's ability to track retail sales were false. See Ronconi v. Larkin, 253 F.3d 423, 431 (9th Cir. 2001). Plaintiff has not, for instance, identified particular factual allegations asserting that Johnson or other Herbalife officers knew about Herbalife's inability to track these figures. The only relevant statements from Johnson suggest that he believed Herbalife tracked these figures - and occurred months after the May 2012 statements from Walsh and the 8-K, and years after the 2010 10-K.[6] (See SAC ¶¶ 39, 48-49.) Plaintiff does refer to a 2011 Internal Report, (see SAC ¶ 65), but does not allege who was aware of its findings or otherwise explain how the report establishes an intent to deceive investors concerning retail sales. In sum, the identified allegations concerning Herbalife and its operations are insufficient to support a strong inference that Defendants possessed the requisite state of mind. See Zucco Partners, LLC, 552 F.3d at 1000-01 (noting that absent two limited exceptions, allegations regarding facts critical to company's core operations generally are insufficient to attribute scienter to company or key officers).

---

[5] Two months later, Herbalife's Principal Accounting Officer Bosco Chiu seemingly contradicted Walsh and the May 2012 8-K by stating that Herbalife does "not rely on the '70% rule' in any meaningful way." (SAC ¶ 47(b).) Although Plaintiff identifies this inconsistency, Plaintiff has not explained how Chiu's statement supports the inference that Herbalife or Johnson intentionally or recklessly misled investors concerning Herbalife's ability to track retail sales or any other aspect of Herbalife's operations.

[6] In December 2012, Johnson stated that "90%" of Herbalife's sales are "absolutely" outside Herbalife's distribution network. (SAC ¶ 48.) Johnson later admitted that the "90%" statement "was a misstatement" and was made because he was "hyped up." (Id. ¶ 49(a).) This admission offers little evidence of an intent to deceive investors. Johnson corrected the statement less than a month after it was uttered, and as discussed below, both the misstatement and its correction came months after Johnson's last class-period stock sale.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiff also contends that scienter can be inferred from Johnson's class-period stock sales. Insider stock sales are not inherently suspicious and support an inference of scienter only when "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." Ronconi, 253 F.3d at 435 (internal citation omitted). To determine whether insider sales are suspicious, courts consider (1) the amount and percentage of shares sold by the insider; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history. See In re Vantive Corp., 283 F.3d at 1092.

Plaintiff alleges that Johnson sold more than 2.3 million shares of Herbalife common stock for more than $126,000,000 from March 1, 2011 (essentially the start of the class period) through May 1, 2012 (the date of the first alleged corrective disclosure). (See SAC ¶¶ 199-202.)[7] The parties dispute the proper method for calculating the percentage of shares sold. Plaintiff suggests that the Court should compare Johnson's class-period sales (2.3 million) with his holdings at the start of the class period (5.14 million), which equates to a 45% decline. (See id. ¶ 202.) Defendants argue that the relevant percentage should compare Johnson's holdings at the start of the class period (5.14 million) to his holdings at the close of the class period (4.54 million), a figure that takes into account the sale and acquisition of shares (including vested stock options) over the class period. Although neither party offers controlling authority, Defendants' method appears better suited for an analysis interested in the suspiciousness of an insider's sales. Selling 2.3 million shares becomes far less suspicious when accompanied by a simultaneous acquisition of more than one million shares. Cf. In re Questcor Sec. Litig., No. SA CV 12-01623 DMG (FMOx), 2013 WL 5486762, at *16 (C.D. Cal. Oct. 1, 2013) ("Plaintiff's calculations of stock sales, however, do not take into account the Trading Defendants' stock options that vested during the Class Period. The Ninth Circuit has held that actual stock shares plus exercisable stock options are a more accurate measure of an owner's trading potential than the stock shares alone."). Under Defendants' calculation, Johnson's class-period shares declined by only 12%, a rate far less suspicious than the 45% presented by Plaintiff.

Regardless of the measure, the amount and percentage of Johnson's stock sales – both undeniably large – are of themselves insufficient to render Johnson's behavior suspicious and indicative of scienter. See In re Vantive Corp., 283 F.3d at 1093 (selling 74% of holdings insufficient to support inference of scienter when timing not suspicious and sales did not appear designed to maximize profit from undisclosed personal

---

[7] Shares are reported on a split-adjusted basis.

## MEMORANDUM

information).  Johnson allegedly sold 2,303,414 shares during the class period and 1,176,652 shares during the preceding three years, a rate of roughly 2:1.  Plaintiff offers no authority for the proposition that such an increase is suspicious.  At least one court has concluded the opposite.  See Kovtun v. VIVUS, Inc., No. C 10-4957 PJH, 2012 WL 4477647, at *21 (N.D. Cal. Sept. 27, 2012) (increase of 2.5x not suspicious), aff'd sub nom. Ingram v. VIVUS, Inc., 591 F. App'x 592 (9th Cir. 2015).  Ultimately, the absence of particularized allegations concerning, for instance, the precise timing or price of Johnson's sales, undermines Plaintiff's ability to establish scienter via Johnson's class-period sales.  See Ronconi, 253 F.3d at 436-37 ("In order for plaintiffs to rely on insider trading as circumstantial evidence of falsity, they must allege sufficient context of insider trading for us to determine whether the level of trading is 'dramatically out of line with prior trading practices.'").[8]

      Notwithstanding this lack of detail, Plaintiff argues that Johnson's class-period sales are suspicious because they occurred pursuant to multiple 10b5-1 trading plans when Herbalife was engaged in a large share repurchase.  (See SAC ¶ 209-11.)  Even recognizing that corporate trading plans do not immunize insiders, and that a corporate repurchase program could render simultaneous insider sales suspicious, the lack of particularized facts concerning Johnson's trading plans or Herbalife's repurchase program preclude such an inference here.  This case also differs from In re Countrywide Fin. Corp. Derivative Litig., 554 F. Supp. 2d 1044, 1066 (C.D. Cal. 2008), on which Plaintiff relies, because Herbalife's stock appears to have peaked at $81.81 in January 2014, nearly a year and a half after Johnson's last class-period sale.  See id. (corporate stock price dropped 80-90% just months after Board liquidated $148 million in personal holdings); see also Ronconi, 253 F.3d at 435 ("When insiders miss the boat this dramatically, their sales do not support an inference that they are preying on ribbon clerks who do not know what the insiders know.").

      Even when viewed in their totality, Plaintiff's allegations do not establish a strong

---

[8] Although not dispositive, the absence of allegations concerning class period stock sales by other insiders cuts against an inference of scienter.  See Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1067 (9th Cir. 2008) ("We typically require larger sales amounts – and corroborative sales by other defendants – to allow insider trading to support scienter."); Ronconi, 253 F.3d at 436 ("One insider's well timed sales do not support the 'strong inference' required by the statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made." (internal footnote omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

inference of scienter. Defendants' motion to dismiss is GRANTED.

If Plaintiff elects to amend, it must file and serve the amended complaint no later than August 27, 2015. Failure to file and serve by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add defendants or claims must be sought by a separate, properly noticed motion. Defendants' response will be due September 28, 2015. The Court strongly suggests that Plaintiff also address Defendants' objections to the loss causation and material misrepresentation allegations as well.

IT IS SO ORDERED.